SPARKILL REALTY CORPORATION and Another, Claimants, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 19587.)

Court of Claims, June 22, 1932.

*Cullen & Dykman* [*W. N. & J. A. Dykman, T. J. Shea, Benjamin McClung* and *Henry J. Hemmens* of counsel], for the claimants.

*Mortimer H. Patterson,* for the Rockland Power and Light Company.

*John J. Bennett, Jr., Attorney-General* [*James Gibson, Carl S. Stern, Walter H. Pollak, Arthur H. Goldberg* and *Ruth R. Kessler, Deputy Assistant Attorneys-General,* of counsel], for the defendant.

BARRETT, P. J. The claimant Sparkill Realty Corporation was on October 11, 1928, the owner of the land involved in this claim located in the town of Orangetown, Rockland county, N. Y., and the claimant Standard Trap Rock Corporation was at the same time a tenant in possession under a lease and supplemental agreements.

Claimants have filed a joint claim and have agreed that no apportionment of the award need be made by this court.

The land involved consisted of about 164 acres, 54 acres of which were meadow land and the remaining 110 acres were uplands and contained a deposit of igneous rock comprising a portion of the sheet of diabase commonly known as trap rock and which is found in that locality known as the Palisades on the Hudson river, this trap rock being used chiefly as coarse aggregate for concrete.

The Commissioners of the Palisades Interstate Park, Inc., appointed under the laws of the States of New Jersey and New York, consisting of ten members, five from each State, for the purpose of locating lands for the establishment of a State park for preservation of the scenic beauty of the Palisades, in the performance of its duty, had prior to the year 1928 acquired various quarry properties along the Hudson river.

From the testimony in this claim, it appears that in the year 1927, the Commissioners, having been informed that a quarry was contemplated upon the site involved in this claim, through their attorneys, informed the then owner of the land that steps preliminary to the condemnation of the property had been ordered taken by the Commissioners and suggested to the owner that if he desired to negotiate for the sale of his land that he should communicate with the Commissioners. Thereafter, some negotiations for the sale were conducted, but no agreement was reached, and in their course it appears that the attorneys for the Commissioners expressed the opinion that there was some doubt as to the power to condemn but none as to the right to purchase. Finally, counsel for the Commissioners wrote to the attorneys for the claimant stating in substance that no steps were to be taken for the condemnation of the property in accordance with a resolution adopted by the Commissioners and also stating in substance that the Com-

missioners would be interested in purchasing the property at a figure which they regarded as reasonable, but that the valuation placed upon it by the owner would not furnish a basis for such negotiations. On October 10, 1927, the attorney for the claimant Standard Trap Rock Corporation wrote counsel for the Commissioners stating in substance that their clients were proceeding with their plans, which meantime had been held in abeyance. The attention of the Legislature was then called to the matter and the Conservation Law was amended extending the powers of the Commissioners, which amendment constituted chapter 242 of the Laws of 1927, and became a law on March 5, 1928, and on October 11, 1928, the property was appropriated by the State, which appropriation was resisted in the courts.

In this brief history no attempt is being made to relate in detail all of the events leading to the appropriation as disclosed by the testimony.

Whether the claimants knew that the land would be taken, and, therefore, should have refrained from making large expenditures thereon, and whether the Commission after the construction of the plant was justified in taking the property, are not, under the circumstances disclosed, questions for this court. The State appropriated the property and must pay for it. Where private property is taken for public use the owners are entitled to just compensation, and the sole question for determination here is the amount of that compensation. For the decision of that question the court before the trial carefully viewed the property, and in the trial, occupying some twenty-five days, heard a great mass of testimony presented by highly qualified and competent witnesses on both sides. Great latitude was allowed in the presentation of this testimony on account of the importance of the matter, the amount of money involved constituting one of the largest claims ever to come before this court.

Before the appropriation the claimant Standard Trap Rock Corporation had partially completed a plant for crushing the stone and in the construction of this plant had paid for equipment the sum of $418,759.25, had incurred unpaid obligations prior to October 11, 1928, for completed equipment in the sum of $165,501.40, and had incurred further obligations in the amount of $346,466.30 on contracts for special equipment to be manufactured and furnished, or total expenditures paid and to be paid of $930,726.95. Of this amount the sums of $8,250, consisting of royalties, and $50,000, paid to the Rockland Light and Power Company, we think, cannot properly be considered upon the question of the value of this property.

The value of the land must be considered.

From the testimony as to prospective profits it appears that the product could be marketed at a profit, and such testimony was considered, not as to the amount of the profit, but solely as to whether there would have been a profit.

The witnesses upon valuation were, as is usual in this class of cases, far apart in their estimates.

In our judgment, claimant established upon the trial that crushed trap rock has greater value as coarse aggregate than any other rock available in the general territory of the site; that the proximity of the site to the metropolitan district of New York and New Jersey, being only eighteen miles distant, afforded a large market for coarse aggregate; that the site was one of the last available on the Hudson river in the vicinity of the metropolitan district for the purposes for which it is used; that the land contains at least 15,314,221 cubic yards of quarryable trap rock, and that the crushing plant is well designed, equipped and adequate, and when complete will produce annually from 500,000 to 750,000 cubic yards of crushed material.

After careful consideration of the testimony, after viewing the property and hearing the witnesses, and after considering all of the testimony above referred to and all of the evidence in the case upon the various elements of value involved, we have concluded that the market value of the property appropriated at the time of the appropriation was $1,650,000, and that an award in that sum should be made together with the sum of $5,000 paid for the abstract of title.

The motion of claimant to strike out certain evidence which appears on page 2553 and following pages of the stenographer's minutes, decision on which was reserved, is denied and an order to that effect may be submitted.

POTTER and ACKERSON, JJ., concur.

PARSONS, J. (dissenting). I regret that I am unable to agree with the prevailing decision in this matter. My dissent has to do largely with the good faith of the Commissioners of the Palisades Interstate Park and the claimants and with the amount of the award to the claimants.

As to the award, the location of the property of the claimants and the market for its product and the amount of such product that could be produced and marketed are beyond question, and the fact that it was the only remaining available location within striking distance of the greatest market in the world for its product was not given sufficient consideration in my opinion. The evidence

of the amount of such product, its market, and the profit to be derived therefrom was proven beyond question.

I am also of the opinion that the claimants from the correspondence and interviews had a right to assume that the Commission did not intend to take this property.

The play on the difference in the words "condemnation" and "appropriation" is to my mind a play on words. How else has the State or its agencies ever taken property except by appropriation? So far as the State is concerned, these two words mean exactly the same thing.

So far as the claimants were concerned, every act performed and every dollar expended, and every obligation incurred were justified.

All of these facts are entitled to consideration in arriving at the fair market value of what was taken from the claimants.

From a somewhat long consideration of the whole record and a very careful reading of the very complete analysis of the facts in the extensive briefs of the claimants and the State, I am of the opinion that the fair market value of the property taken from the claimants is at least $3,000,000.

I, therefore, hold that the award herein for the fair market value of the property appropriated should be $3,000,000.